UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

ORRIN DEVINSKY, :

                            Plaintiff, : 05 Civ. 2064 (PAC)

   -against- : <u>ORDER</u>

DANIEL KINGSFORD, <u>et</u> <u>al.</u> :

                        Defendants. :
-----------------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Orrin Devinsky is a neurologist of note, who invested in real estate on the side with Robert K. Marceca, a real estate entrepreneur with a dubious background. Marceca and Devinsky met during the course of Devinsky's medical treatment of Marceca's daughter. In Summer, 2000, Marceca, assisted by his business associates, Daniel Kingsford and Goldie Rotenberg, started soliciting Devinsky to make investments and loans, with the usual blandishments that the investments were safe and that Devinsky would make money. These proved to be convincing arguments and over the seven months between September 2000 and March 2001, Devinsky made investments and/or loans totaling $4.45 million dollars to Marceca and his sprawling real estate enterprise. The investments failed, and to complicate matters, Marceca died in December 2000, leaving behind what is commonly known as a "mess."

Devinsky made the following real estate investments:

<u>1.  13 East 32nd</u>

On September 28, 2000, Devinsky signed the Third Amended and Restated Operating Agreement of 13 East 32nd Units LLC ("32nd Units Operating Agreement"),

in which he agreed to invest $1,000,000 for a 21% membership interest in a new entity called 13 East 32nd Units LLC ("32nd Units").[1] (Stipulated Joint Exhibit ("JE") 9.) The remaining 79% of 32nd Units was held by 32nd St. Member, a Marceca-affiliated entity that, per the 32nd Units Operating Agreement, was designated to manage the new entity. (See 32nd Units Operating Agreement § 3.12.) Section 6.01 of the agreement governs the members' capital contributions, stating, "Each Member shall be deemed to have contributed . . . such amount (in cash or property) as is set forth opposite such Member's name in Schedule A." Schedule A lists Devinsky's contribution as $1,000,000. The contribution of 32nd St. Member is valued at $2,500,000, which, according to the Estate Defendants, represents the value of the underlying property. (EESOF ¶ 31.)

32nd Units was sold in December 2001. Shortly thereafter, in January 2002, Plaintiff received a return of his principal investment of $1 million. After the sale, Kingsford told Devinsky that there had not been any profits from the sale of 32nd Units and showed him a calculation purportedly to that effect. However, Devinsky testified that the Executor Defendants told him in October 2002 that he was owed "substantial" profits relating to the sale of 32nd Units, though they did not give a specific amount nor documentation. (EED SOF Response ¶ 37; July 28, 2006 Deposition of Orrin Devinsky ("7/28/06 Devinsky Dep.")[2] at 119:18-120:13.)

2. 233 East 77th Street

On November 10, 2000, Devinsky paid Marceca $150,000 for an option to purchase a 35% interest in 233 East 77th LLC, which owned real property located at the

---

[1] According to Estate Defendants' Expert, Paul Dzigas, 32nd Units owned almost all of the stock of 13 East 32nd Housing Corporation, a cooperative housing corporation that owned the property at 13 East 32nd Street. (EED SOF ¶ 29.)
[2] Submitted as Exhibit 1 to the Declaration by Russell Bogart in Opposition to Estate Defendants' Motion for Summary Judgment ("Bogart Decl.").

same address. The option agreement expired by its terms on December 31, 2000. Devinsky is not pursuing any claims based on this option. (See EED Opp'n at 1 n.1.)

3.  3 East 75 Corp.

In November 2000, Devinsky signed a loan agreement ("75th St. Loan Agreement") in which he agreed to loan Marceca $1,000,000. (JE 12.) The loan was to be repaid solely from so-called "Distributable Profits," profits Marceca earned on stock he owned in an entity called 3 East 75 Corp. ("75 Corp."), on the earlier of (i) the date of final distribution of the Distributable Profits or (ii) November 2, 2010. (JE 12, at 1-2.) At the time Devinsky and Marceca entered into the 75th St. Loan Agreement, Marceca owned 50% of the stock of 75 Corp.

In 2003, after Marceca's death, the Estate sold its 50% share to the corporation's co-owner, the Rinzler Group, for $1,900,000. The Estate claims that the sale did not trigger the Distributable Profits clause because the money came from a third party and not from the 75 Corp. entity itself. According to the Estate, Plaintiff's claim based on his 75th Street loan is premature, because (1) there has not been a final distribution of the Distributable Profits and (2) the maturity date—November 2, 2010—has not been reached. Devinsky claims that the sale of 75 Corp. was intentionally structured in violation of the covenant of good faith to avoid triggering repayment under the 75th St. Loan Agreement.[3]

---

[3] At his deposition on August 15, 2006, the Estate's counsel, William Norden, testified that he and the Executor Defendants considered repaying Devinsky's loan from the proceeds of the sale but concluded that they could not "repay Devinsky because that would prefer him to other unsecured creditors. (See Declaration of Anthony Constantini ("Constantini Decl."), Ex. 6 ("Norden Dep."), at 295:11-296:8.)

3

4. 142 East 49th Street

Shortly before his death, Marceca convinced Devinsky to invest $600,000 to obtain an equity interest in a property located at 142 East 49th Street. Devinsky made the investment in two stages: (1) on October 19, 2000, in the amount of $500,000 of which $350,000 related to 49th Street and $150,000 related to 77th Street[4]; and (2) on January 12, 2001 (after Marceca's death), in the amount of $250,000. Devinsky testified that he made the latter investment based on representations from Kingsford. (EED SOF Response ¶¶ 61-63.) Devinsky did not receive any transaction document, such as a contract or membership agreement, concerning any investment relating to the 49th Street property.

By March 2001, Kingsford reported in a letter to Devinsky, that the entire building was about to come under the control of a Marceca-related entity.[5] He later testified that the Estate could not put the financing together for the project as originally intended due to Marceca's intervening death. (See October 10, 2006 Deposition of Daniel Kingsford ("10/10/06 Kingsford Dep.")[6] at 194:3-12.) As a result, Kingsford arranged for a "flip sale" of the 49th Street entity to a purchaser named Bob Heller in June 2001. (Id. at 193:13-16.) Devinsky was never paid any proceeds from this sale, though Kingsford testified that he "[p]robably should have been," and that 49th Street was a "mystery" to him. (Id. at 194:3-6.) He suggested that the absence of a signed agreement

---

[4] A ledger purportedly showing Devinsky's advances reflects the latter transfer to Kensington on January 12, 2001, in the amount of $250,000. (JE 6.) There is, however, no separate entry in the ledger for the October 2000 transfer. Kingsford explains that as of November 2000, Devinsky made transfers totaling $1.5 million, of which $150,000 was applied to the 77th Street option and $1 million to the non-recourse personal loan to Marceca leaving a balance of $350,000, which was then applied to the 49th Street investment. (DKSOF ¶ 79.)
[5] Though the Estate Defendants claim that Joint Exhibit 19 supports this statement regarding the ownership of 142 East 49th Street, it appears to focus on the "East-West" investment. (See JE 19.)
[6] Submitted as Exhibit 11 to the Declaration of Anthony J. Costantini ("Costantini Decl.").

documenting Devinsky's interest in the property might have precluded repayment. (Id. at 194:15-18.) Devinsky testified that, subsequent to the June 2001 "flip sale," Kingsford falsely stated to him in several conversations, both on the phone and in person, that the sale did not go through and that he was still working on the sale.[7] (EED Response ¶¶ 68-69.)

The ledger for Kensington, a holding corporation for Marceca's properties, reflects a $600,000 loan and exchange with Devinsky. (JE 26.) The Estate concedes that "someone" owes Devinsky $600,000, but does not expressly concede that this someone is either Kensington or the Estate.[8] (EED Mem. at 9.) On the assumption that the Estate owed Plaintiff this money, the Executor Defendants considered repaying Plaintiff in 2002 but were advised by counsel that such a payment, at a time of insolvency, would be a preference vis-à-vis other unsecured creditors and should not be made. (EED SOF ¶¶ 72-74.) Accordingly, no payment was made.

5. 111 East 26th Street LLC

In December 2000, Devinsky invested approximately $1.5 million for a 35% interest in 111 East 26th Street, an entity to own and operate the premises at 111 East 26th Street in New York. (EED SOF Response ¶¶ 43). The September 11, 2001 terrorist attacks made the proposed exploitation of air rights at this property worthless, so Kingsford sold the building for $4.5 million in November 2001 and Devinsky did not receive a return on his investment. (Id. ¶¶ 49, 53).

---

[7] Devinsky offers the Watts audit report, prepared for the Estate as of October 2, 2002, which purports to show that a Marceca-related entity, Kane, paid "promotion" expenses of $47,900 in total to Kingsford, Amanda LLC, and Rotenberg. (See Audit Report of Nanette Watts ("Watts Report") (Bogart DK Decl. Ex. N).)
[8] Norden, the Estate's counsel, specifically testified that he was uncertain whether the Estate was liable for Kensington's debts (see OD SOF Response ¶ 14).

5

6. East-West 4

In March 2001 (in the only investment made after Marceca's death), Devinsky agreed to loan $200,000 to East-West 4 LLC. The term of the loan was six months at an interest rate of 15%. The loan was to be secured by a mortgage, which was never recorded. The loan expired by its terms in September 2001, and Devinsky did not ask for his money back. The East-West property was sold in July 2002 and the title search did not disclose the existence of the unrecorded mortgage. Even though the Executors believed that all creditors had been repaid, Devinsky never received his money back on this investment. The Estate Defendants concede that East-West 4 breached the loan agreement and that Devinsky is entitled to a return of his $200,000 investment. An issue remains issue concerning the interest rate for this return of this investment.

Devinsky is pursuing claims on all but one (77th Street option) of the above investments, and other than the return of his $1 million on the 32nd Street investment, Devinsky has never been repaid for the near $3.5 million he loaned to Marceca's real estate enterprise and his Estate after his death.

These complex investments with their convoluted history resulted in litigation that commenced in February 2005. Devinsky sued everyone who could spell M-A-R-C-E-C-A, including the following: the Estate of Robert K. Marceca ("Estate"); Daniel Kingsford ("Kingsford"); Judith Kingsford ("Judith"―who is Daniel's wife), two related corporate entities and one related trust entity[9]; Goldie Rotenberg ("Rotenberg") and two related corporate entities[10] (Marceca's will appointed Kingsford and Rotenberg

---

[9] These defendants are Amanda LLC, Aesop Stables LLC, and Amanda Trust (collectively the "Judith entities").
[10] These defendants are Wise Acre Real Estate Ltd., and Wise Acre Real Estate LLC (collectively the "Rotenberg entities").

as managers of his real estate enterprise); John Hoey ("Hoey") and Michael Blumenthal ("Blumenthal"), individually and as executors of the Estate (collectively the "Executor Defendants") (the Executors eventually concluded that Kingsford and Rotenberg were overpaying themselves, fired them and obtained a judgment against them in New York Surrogate's Court for fraud); and various corporate and real estate entities alleged to be involved in the scheme (collectively the "Real Estate Defendants").[11]

The gravamen of the Complaint is that Defendants have fraudulently transferred, diverted, and/or obtained funds originally invested in a number of real estate ventures through a complex series of transactions. Specifically, Plaintiff claims that (1) Marceca, Kingsford, and Rotenberg, acting individually and on behalf of several corporate entities, fraudulently induced Plaintiff to make investments in six real estate projects and siphoned off these monies for themselves and others; (2) Kingsford, Rotenberg, Judith, and a number of corporate entities fraudulently transferred and/or received assets of the Estate in violation of New York Debtor and Creditor Law §§ 273 and 276; (3) the same Defendants, plus the Estate, were unjustly enriched at the expense of Plaintiff; (4) the Estate and certain Real Estate Defendants breached their contractual obligations to Plaintiff; and (5) the Executor Defendants failed to exercise reasonable care, diligence, and prudence in the court of their administration of the Estate.

Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure Rule 56(b) as follows. The Executor and Real Estate Defendants and the Estate (the "Estate Defendants") seek: (1) dismissal of the negligence claims against the

---

[11] These defendants include RKM Enterprises Real Estate Investments, Inc. ("RKM"), Kane Realty Services, Inc., Kensington Holding Corporation ("Kensington"), 111 East 26 Member LLC ("111 East 26 Member"), 32nd Street Member LLC ("32nd St. Member"), 13 East 32nd Units LLC ("32nd Units"), and East-West 4 LLC ("East-West").

Executor Defendants in their individual capacities; (2) dismissal of the fraud, fraudulent conveyance, unjust enrichment, and breach of contract claims against the various Real Estate Defendants and the Estate; and (3) the reference to New York Surrogate's Court of any claims surviving summary judgment pursuant to the federal probate exception. Judith moves to dismiss the fraudulent conveyance and unjust enrichment claims against her for lack of personal jurisdiction. Kingsford, in a motion adopted by Rotenberg and the Rotenberg entities,[12] moves for summary judgment on the common law fraud, fraudulent conveyance, and unjust enrichment claims. In addition, Plaintiff moves pursuant to Federal Rule of Civil Procedure 56(a) for partial summary judgment on the breach of contract claims against Defendants East-West and 111 East 26 Member, as well as the unjust enrichment claim against the Kensington.

An amended complaint was filed on August 23, 2005 alleging claims of fraud, negligent concealment, unjust enrichment and breach of contract, all based on the investments made in the seven months from September 2000 to March 2001.

**I. Personal Jurisdiction as to Judith Kingsford**

Judith Kingsford played no role in the alleged fraudulent scheme, but she is said to be a transferee of funds fraudulently obtained by her husband Daniel from both Devinsky and the Estate. Devinsky pursues her under three theories: (1) constructive fraudulent conveyance pursuant to § 273 of the N.Y. Debtor and Creditor Law; (2) actual intent to defraud creditors under § 276 of the N.Y. Debtor and Creditor Law; and (3) common law unjust enrichment. (See Am. Compl. ¶¶ 119-134.) Judith now moves to

---

[12] Rotenberg and the Rotenberg entities filed a motion independently but adopt the motion for summary judgment and rely on the supporting papers filed by Kingsford. (See Motion of Defendants Goldie Rotenberg, Wise Acre Real Estate Ltd. and Wise Acre Real Estate LLC Seeking Summary Judgment dismissing the Amended Complaint at 3.)

8

dismiss these claims for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 56(b). She contends that Plaintiff has failed to demonstrate that she was a participant in the alleged fraudulent scheme that Kingsford used to convert the Plaintiff's funds or that she had any knowledge, actual or implied, of Kingsford's scheme. She argues that there is simply no proof that she did anything in the State of New York in connection with those transfers, sufficient to ground the Court's personal jurisdiction as a matter of law. Judith's motion for summary judgment is granted and all claims against her are dismissed.

Judith Kingsford is a Florida domiciliary and has no contacts or business in New York. To be subject to New York long-arm jurisdiction, N.Y. C.P.L.R. § 302(a)(2), she must have engaged in tortious conduct within New York.

It is settled, however, that passive receipt of allegedly stolen funds, absent evidence of knowledge or intent, is an inadequate basis for the court's exercise of personal jurisdiction under § 302(a)(2). Langenberg v. Sofair, No. 03 Civ. 8339 (KMK), 2006 WL 2628348, at **2-5 (S.D.N.Y. Sept. 11, 2006).

At this stage, after extensive discovery, Devinsky is able to produce no evidence of Judith's knowledge of the fraudulent scheme. Instead, Devinsky proffers only conclusory and speculative statements pertaining to Judith's cognizance of the wrongfulness of the transfers. At trial, he claims he will be able to impeach Judith to demonstrate her lack of credibility on this issue. (P56.1 JK ¶ 16, 18). The desire to cross-examine a witness at trial is not a substitute for establishing material facts sufficient to survive summary judgment scrutiny and cannot serve as the basis for jurisdiction. See Nat'l Union Fire Ins. Co. of Pittsburgh v. Argonaut Ins. Co., 701 F.2d 95, 96 (C.D. Cal.

1983) ("[N]either the desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment.").

## II. Executor Defendants

Plaintiff's lone claim against the Executor Defendants in their individual capacity is the third claim for relief, entitled "Negligence" in the both the original and amended complaints. Plaintiff alleges that "Blumenthal and Hoey are individually liable for the torts committed in the course of the administration of the Estate because they failed to exercise reasonable care, diligence and prudence." (Am. Compl. ¶ 109.) In their summary judgment brief, the Executor Defendants assert, <u>inter alia</u>, a statute of limitations defense against this negligence claim. In his opposition, Devinsky urges the Court to consider that his negligence claim has been amended on the fly to a claim for breach of fiduciary duty. The Court will not allow this.

The Complaint has been amended once. Discovery has proceeded over an extended time. Now, in response to a motion for summary judgment, Devinsky wants another amendment. "It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment." <u>Beckman v. U.S. Postal Serv.</u>, 79 F. Supp. 2d 394, 407-08 (S.D.N.Y. 2000); <u>see</u> <u>Bush v. Fordham Univ.</u>, 452 F. Supp. 2d 394, 406 (S.D.N.Y. 2006) ("[C]ourts in this district have consistently ruled that it is inappropriate to raise new claims for the first time in opposition to summary judgment.") (internal quotations omitted).

While Devinsky claims that the "essence" of the claim is for breach of fiduciary duty, (Pl.'s Mem. Opp. ED at 17), the Complaint uses terms and standards that are plainly negligence-based—the words "negligence", "reasonable care", "diligence", and

"prudence" are used repeatedly in the claim; the word "fiduciary" is never mentioned. "Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense." Bush, 452 F. Supp. 2d at 406 (citing Beckman, 79 F. Supp. 2d at 408). Nothing in the amended complaint gave the Executor Defendants fair notice that Devinsky was asserting a breach of fiduciary duty claim against them.[13]

Defendants raise substantial arguments against the Plaintiff's negligence claim. Rather than address them, Devinsky proposes to shift gears. The amendment will not be permitted and the Court takes Devinsky at his own word and dismisses his negligence claim as to Defendants Blumenthal and Hoey.

**III. All Other Motions by Defendants and Plaintiff**

Devinsky has multiple claims, with multiple theories, against multiple parties, all in an effort to get his money back. Defendants moved for summary judgment on various of the claims. The motions raise factual questions, such as whether there was insolvency, and if so, when; and whether certain actions were taken with intent. Indeed, there are myriad questions of facts which arise out of these complex real estate transactions which preclude summary judgment. Accordingly, the motions are denied. Specifically, all motions by Daniel Kingsford and Goldie Rotenberg are denied; as are the motions by the Estate and the Real Estate Defendants. Devinsky moves for partial summary judgment

---

[13] The Executor Defendants state in their reply that: "For the last 2 ½ years, the Executors have dutifully defended against Plaintiff's claim—the Fourth Claim in the first Complaint and the Third Claim in the Amended Complaint—that they were negligent. When they moved to dismiss parts of the Complaint, Plaintiff assured the Court that: the only claim raised here against Blumenthal and Hoey is a claim for their own negligence." (Defs.' Reply ED at 3 (emphasis omitted).)

11

based on various concessions made by some Defendants. Devinsky's motions are denied as well.

Since this lawsuit will continue, the Defendants suggest that the remaining matters be transferred to Surrogate's Court, pursuant to the federal probate exception. That argument is denied. The matters in litigation do not deal with the "probate or annulment of a will," nor do they deal with the disposition "of property that is in the custody of a state probate court." Marshall. v. Marshall, 547 U.S. 293, 311 (2006). Unless a plaintiff is seeking either of these narrowly defined goals, federal courts retain jurisdiction, even if doing so results in a judgment that is "intertwined" with and binding on State proceedings. Lefkowitz v. Bank of New York, 2007 WL 1839756 at *3 (2d Cir. June 28, 2007).

## CONCLUSION

Judith Kingsford's motion to dismiss for want of personal jurisdiction is granted. The motion by the Executor Defendants, Blumenthal and Hoey, in their individual capacities to dismiss the negligence claim, is granted. All other motions are denied. The Court retains jurisdiction of this matter and it is not referred to Surrogate's Court. The Court notes the concessions made with regard to East-West 4 LLC as to liability, and invites the parties' submissions on the calculations of the appropriate interest rate.

Dated: New York, New York
     March 31, 2008

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

based on various concessions made by some Defendants. Devinsky's motions are denied as well.

Since this lawsuit will continue, the Defendants suggest that the remaining matters be transferred to Surrogate's Court, pursuant to the federal probate exception. That argument is denied. The matters in litigation do not deal with the "probate or annulment of a will," nor do they deal with the disposition "of property that is in the custody of a state probate court." Marshall. v. Marshall, 547 U.S. 293, 311 (2006). Unless a plaintiff is seeking either of these narrowly defined goals, federal courts retain jurisdiction, even if doing so results in a judgment that is "intertwined" with and binding on State proceedings. Lefkowitz v. Bank of New York, 2007 WL 1839756 at *3 (2d Cir. June 28, 2007).

## CONCLUSION

Judith Kingsford's motion to dismiss for want of personal jurisdiction is granted. The motion by the Executor Defendants, Blumenthal and Hoey, in their individual capacities to dismiss the negligence claim, is granted. All other motions are denied. The Court retains jurisdiction of this matter and it is not referred to Surrogate's Court. The Court notes the concessions made with regard to East-West 4 LLC as to liability, and invites the parties' submissions on the calculations of the appropriate interest rate.

Dated: New York, New York
March 31, 2008

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge